IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DAVID E. BOUNDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-1366 (PTG/TCB) |
| ) | Hon. Patricia Tolliver Giles |
| UNITED STATES PATENT AND ) | |
| TRADEMARK OFFICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on the Parties' Cross-Motions for Summary Judgment ("Motions"). *See* Dkts. 26, 32.

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff David E. Boundy, a patent attorney, submitted a request for records to the United States Patent and Trademark Office (the "USPTO" or "Defendant"). Plaintiff sought "all documents," including "guidance, memoranda, instructions, or other documents (internal or external)" that guided acceptable signatories for patent applications. Plaintiff submitted his original FOIA request on March 12, 2021 and received numerous document productions—totaling hundreds of pages—from Defendant from December 17, 2021 through May 6, 2022. Defendant withheld six pages of records in full and twenty-eight pages in part, claiming that they were protected from disclosure pursuant to one of the statutory exemptions under the FOIA, 5 U.S.C. § 552(b)(5) ("Exemption Five"). Plaintiff filed a Complaint with this Court, arguing that Defendant did not perform an adequate search under the FOIA and was improperly withholding information from Plaintiff that was subject to disclosure under the FOIA.

1

The Court heard oral argument on the Cross-Motions, and ordered *in camera* review of the withheld documents. After reviewing the documents, the Court finds that Defendant has properly withheld information pursuant to Exemption Five of the FOIA, with one narrow exception as noted below. The Court also finds that Defendant performed an adequate search under the FOIA. Accordingly, summary judgment is **GRANTED** as to Defendant and **DENIED** as to Plaintiff.

## I. FACTUAL BACKGROUND[1]

### A. Plaintiff's Original FOIA Request and Defendant's December 2017 Decision

On March 12, 2021, Plaintiff submitted a FOIA request ("Plaintiff's original request") to Defendant seeking:

> all documents issued since, or in effect at any time since, the America Invents Act in September 2011 that purport to govern or recommend either form of signature, title of a signatory, or establishing authority of a natural person signatory to act on behalf of an applicant or assignee, for signatories who are not registered attorneys or agents.

Dkt. 27-1 at 18. Plaintiff specified that his request "cover[ed] internal and external documents authored by the PTO or PTO personnel" that included "guidance, memoranda, instructions, or other documents (internal or external) that purports to elaborate on, or guide application of, regulation[.]" *Id.* Plaintiff stated that his request excluded "the text of the relevant regulations, 37 CFR § 1.4, § 1.32(b)(4), § 3.71, and § 3.73." *Id.* As an example of the type of document he was looking for, Plaintiff attached a USPTO document ("2013 Authority Chart") that provided examples of titles of signatories that had "acceptable apparent authority" and those that did not have acceptable apparent authority. *Id.* at 20. In communicating with Defendant about a potential fee waiver, Plaintiff stated that he "tried to frame the request as narrowly and specifically as

---

[1] The material facts in this case are not in dispute and are borne out by the record. Plaintiff admits or concedes to the majority of Defendant's Undisputed Material Facts, *see* Dkt. 32 at 2–3, as does Defendant to Plaintiff's Undisputed Material Facts, *see* Dkt. 33 at 4–5.

2

possible, to get 'the real rules,' the guidance documents used by PTO personnel to evaluate signatures for Powers of Attorney and § 3.73 statements." *Id.* at 31. Plaintiff also indicated that he was "open" to suggestions for "an easier search" from the USPTO. *Id.*

In June 2021, Defendant informed Plaintiff that it needed additional time to complete his request because its initial search had "resulted in a large number of potentially responsive records that need to be reviewed and possibly redacted in part." *Id.* at 46. Plaintiff responded, stating, "I thought I was requesting at most a handful of documents. If there's a plausible way to reduce work for you, I'm more than happy to have a phone call to do so." *Id.*

In December 2021, Plaintiff and FOIA Officer Dorothy Campbell had a phone conversation regarding Plaintiff's FOIA request. *See id.* at 65. In an email to Plaintiff intended to "memorialize" their conversation, Campbell stated that Plaintiff had "provided clarification about the type of record(s)/documents that [he was] seeking from the USPTO": an updated version of the 2013 Authority Chart "or any other guidance on signatory titles for power of attorney designations that the Agency may have." *Id.* In a response letter, Plaintiff stated that the "general scope" of his FOIA request was: (1) "[d]ocuments that govern or recommend requirements for signatures, when the signatory is *not* an attorney/agent registered before the Office"; (2) documents regarding "signatures on any document that is typically signed by someone other than a registered attorney" including "powers of attorney, assignments, declarations, and [37 C.F.R.] § 3.73 statements"; and (3) "all criteria that are evaluated for whether to accept or reject a signature[,]" including "[w]hat titles are and are not accepted" and "criteria for the signature itself[.]" *Id.* at 72–73 (emphasis in original).

On December 17, 2021, Defendant sent Plaintiff a decision letter stating that, based on Plaintiff's communication, Defendant had conducted a "more focused search" and produced a

3

single document that was responsive to Plaintiff's request: a revised version of the 2013 Authority Chart ("2016 Authority Chart"). *Id.* at 77–78. The letter notified Plaintiff that his request was "considered complete with full disclosure." *Id.* at 78.

### B. Plaintiff's Appeal, Remand, and Productions Pursuant to Remand

Plaintiff appealed Defendant's December 17 decision. Dkt. 27-1 at 82. Plaintiff contended that while his prior conversations with Defendant were meant to convey that his request covered "all records explaining any 'secret rule' relating to signatures or signatories," he never intended to narrow the scope of his original FOIA request. *Id.* at 83. Accordingly, Defendant remanded and reopened Plaintiff's FOIA request. *Id.* at 104, 107.

On February 11, 2022, Defendant notified Plaintiff that pursuant to the remand, it had identified additional responsive documents: nine pages of emails.[2] Dkt. 27-2 at 3. Two pages were released in full and seven pages were redacted in full pursuant to the deliberative process privilege under Exemption Five of the FOIA. *Id.* at 5–13; 5 U.S.C. § 552(b)(5). Defendant informed Plaintiff that "the withheld information consists of opinions and recommendations regarding proposed agency actions . . . and are deliberative, . . . in that it makes recommendations or expresses opinions on legal or policy matters." *Id.* at 3. Plaintiff did not administratively appeal Defendant's February 11 decision.

### C. Plaintiff's "Objections" to Defendant's Productions Pursuant to Remand and Defendant's Additional Productions

Following Defendant's February 11 decision, Plaintiff lodged a number of "objections" to Defendant's document productions pursuant to remand. Dkt. 27-2 at 22–24, 26. The objections centered around Defendant's alleged "over-redact[ion]" of the documents in its February 11

---

[2] Defendant later produced ninety-eight additional documents in full to Plaintiff, clarifying that the documents should have been included in its February 11 production. *Id.* at 15–20. Thus, Plaintiff's allegations of "over-redaction" do not appear to apply to these documents.

4

production and Plaintiff's belief that "several documents remain missing." *Id.* at 22.

In response, Defendant provided Plaintiff with updated, less-redacted versions of the documents from Defendant's February 11 production. *Id.* at 42–53. Defendant explained that the documents remained partially redacted pursuant to the deliberative process privilege because it "consist[ed] of communications among" USPTO personnel "reflecting their opinions and recommendations prior to the adoption of any Agency positions regarding signatory authority" and that those communications were "pre-decisional" because no final decision was made to update the 2016 Authority Chart. *Id.* at 42. Defendant informed Plaintiff that although some of his objections "appear[ed] to go outside the scope" of Plaintiff's original FOIA request," Defendant would produce additional redacted documents "in a good faith effort to resolve this litigation (and obviate the need for Plaintiff to submit an additional FOIA request)." *Id.* at 42, 55.

On May 6, 2022, Defendant produced twenty-five pages of documents, noting that they were "largely redacted for attorney-client privilege and deliberative process privilege" pursuant to Exemption Five of the FOIA as Plaintiff sought pre-decisional "discussions among agency employees regarding potential amendments to a policy and/or guidance that were not ultimately issued." *Id.* at 62. Defendant confirmed that the May 6 production constituted "all responsive documents to [Plaintiff's] request located after a reasonable search." *Id.* at 95.

### D.     The Present Lawsuit

On December 7, 2021, Plaintiff filed a Complaint in the United States District Court for the Eastern District of Virginia alleging that Defendant violated the FOIA by failing to timely provide Plaintiff with responsive records pursuant to his March 12, 2021 request. Dkt. 1 ("Compl.") ¶ 2. Plaintiff sought (1) declaratory relief stating that Defendant violated the FOIA "by failing to lawfully and timely satisfy" Plaintiff's request; and (2) injunctive relief ordering

5

Defendant to "immediately and expeditiously conduct a search that is reasonably calculated to uncover all relevant records, [and] process and release all non-exempt records responsive to" Plaintiff's request. *Id.* ¶¶ A–B. Defendant and Plaintiff, respectively, filed Motions for Summary Judgment. *See* Dkts. 26, 32. In support of its Motion for Summary Judgment, Defendant filed a Declaration of Dorothy G. Campbell. Dkt. 27-1 at 1–16 (hereinafter, "Campbell Decl."). Defendant also filed a *Vaughn* index of withheld records. *See* Dkt. 27-2 at 101–14 (hereinafter, "*Vaughn* index").

On October 27, 2022, the Court heard argument on the Cross-Motions. At that time, the Court directed Defendant to submit unredacted copies of the documents identified in the *Vaughn* index to the Court for an *in camera* inspection. The Court has received and reviewed those document as well as Plaintiff's Notice and attached Exhibit 31 (Dkt. 38). Thus, this matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Motion for Summary Judgment

Summary judgment will be granted where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *see Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 426 (E.D. Va. 2010). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, such that "there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks omitted).

**B. FOIA**

As a "general rule," FOIA disputes are resolved on summary judgment. *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004). According to the Fourth Circuit, "FOIA was enacted as a general disclosure statute pertaining to all federal records[.]" *Bowers v. DOJ*, 930 F.2d 350, 353 (4th Cir. 1991). However, realizing "'that legitimate governmental and private interests could be harmed by release of certain types of information[,]' . . . Congress provided the exemptions set forth in [5 U.S.C.] § 552(b)" that protect certain categories of information from public disclosure. *Id.* (internal citation omitted) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)). These exemptions "are to be narrowly construed in favor of disclosure." *Id.* at 354; *see Abramson*, 456 U.S. at 630.

A district court reviews an agency's FOIA determination *de novo*. 5 U.S.C. § 552(a)(4)(B). "The burden is on the agency to sustain its action in response to a FOIA request." *Virginia-Pilot Media Cos., LLC v. DOJ*, 147 F. Supp. 3d 437, 443, (E.D. Va. 2015) (citing 5 U.S.C. § 552(a)(4)(B); *Willard v. IRS*, 776 F.2d 100, 102 (4th Cir. 1985)). If, "viewing the facts in the light most favorable to the requestor, no material facts are in dispute with regard to the agency's compliance[,]" the agency is entitled to summary judgment. *Id.* (citing *Rein v. USPTO*, 553 F.3d 353, 358 (4th Cir. 2009); *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 590 (4th Cir. 1994)).

Upon receiving a FOIA request, an agency must conduct a search that is "reasonably calculated to uncover all relevant documents." *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994) (quotation marks omitted) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials as long as the affidavits are relatively detailed, nonconclusory and submitted in

good faith." *Carter, Fullerton & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 734 (E.D. Va. 2009) (quotation marks omitted) (quoting *McCoy v. United States*, No. 1:04-cv-101, 2006 WL 463106, at *5 (N.D. W. Va. Feb. 24, 2006), *aff'd*, No. 1:04-cv-101, 2006 WL 2459075 (N.D. W. Va. Aug. 23, 2006)). Such affidavits may not "simply aver[] that the search was conducted in a manner 'consistent with customary practice and established procedure.'" *Ethyl Corp.*, 25 F.3d at 1246–47 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The affidavits must be "reasonably detailed, 'setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched,'" such that the requesting party is enabled to challenge the adequacy of the search. *Id.* at 1247 (quoting *Oglesby*, 920 F.2d at 68). Under the FOIA, "a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility . . . and reproducibility" of the records. 5 U.S.C. § 552(a)(4)(B). "The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency." *Spannaus v. DOJ*, 813 F.2d 1285, 1289 (4th Cir. 1987) (quoting *Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir. 1980)).

A party opposing an agency's summary judgment motion "must offer more than conclusory statements" and "must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all non-exempt material in the requested documents." *Carter, Fullerton & Hayes*, 601 F. Supp. 2d at 734 (quoting *Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 139 (D.D.C. 2007)).

### III. DISCUSSION

#### A. This Matter is Not Moot

As an initial matter, Defendant argues that Plaintiff's claim is moot and should be

dismissed because Defendant "has fully complied with Plaintiff's FOIA request" by producing all responsive records to Plaintiff. Dkt. 27 at 16. "It is undisputed that a challenge to a particular denial of a FOIA request becomes moot if an agency produces the requested documents." *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999) (citing *Payne Enter., Inc. v. United States*, 837 F.2d 486, 490–91 (D.C. Cir. 1988)). Plaintiff counters, however, that because he "specifically challenges the adequacy" of Defendant's search and because Defendant continues to withhold information, the case is not moot. Dkt. 32 at 12.

This Court finds that Plaintiff's claim is not moot because Plaintiff challenges the adequacy of Defendant's search, and this Court must still determine whether the pages withheld in full and in part by Defendant are being properly withheld under the FOIA. *See Reg'l Mgmt. Corp.*, 186 F.3d at 465; *Wickwire Gavin, P.C. v. Def. Intel. Agency*, 330 F. Supp. 2d 592, 596 (E.D. Va. 2004) ("Once a requestor of information files a judicial challenge to an agency's denial of its FOIA request, 'a district court must make a *de novo* determination of whether government records were properly withheld under an FOIA exemption provision.'" (quoting *Willard*, 776 F.2d at 102)).

### B. Defendant's Search Was Reasonably Calculated to Lead to Responsive Records

Plaintiff argues that Defendant failed to show "its search was reasonably calculated to uncover all relevant documents" and contends the search was not "commensurate" with the scope of Plaintiff's request because Defendant failed to use a number of relevant search terms. Dkt. 32 at 14, 17. Defendant argues its search was reasonable because it searched the appropriate places and used appropriate search methods given Plaintiff's original request, as detailed in the Campbell Declaration. Dkt. 27 at 17.

An agency must conduct a search that is "reasonably calculated to uncover all relevant documents." *Ethyl Corp.*, 25 F.3d at 1246 (quotation marks omitted) (quoting *Weisberg*, 745 F.2d

9

at 1485). A search's reasonableness may be determined by considering "affidavits of responsible agency officials" that "are relatively detailed, nonconclusory and submitted in good faith," *Carter*, 601 F. Supp. 2d at 734 (quotation marks omitted) (quoting *McCoy*, 2006 WL 463106, at *5), and that "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched," *Ethyl Corp.*, 25 F.3d at 1247 (quotation marks omitted) (quoting *Oglesby*, 920 F.2d at 68). This Court has adopted the "established precedent of other circuits that an agency is entitled to limit its search based on an appropriate internal analysis of the locations where responsive documents are most likely to be located," an approach that is "both practical and acknowledges the agency's familiarity with its own documents and filing procedures." *Carter*, 601 F. Supp. 2d at 735. As the Fourth Circuit has stated, "the relevant inquiry is not whether the Agenc[y's] search uncovered every potentially responsive document, but whether the search was 'reasonably calculated to discover responsive documents.'" *Rein*, 553 F.3d at 364 (citing *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993)). Thus, "[a] 'reasonably calculated search' does not require that an agency search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of the circumstances." *Id.*

Defendant, in light of the totality of the circumstances, conducted a search that was reasonably calculated to find records responsive to Plaintiff's request. Defendant submits the Campbell Declaration (Dkt. 27-1 at 1–16) in support of its contention that its search was reasonable. According to the Campbell Declaration, Plaintiff's March 12, 2021 request was assigned to FOIA Specialist Charletta Blackshear for processing. Campbell Decl. ¶¶ 4, 9. FOIA staff determined that records responsive to Plaintiff's request would be located in the Office of the Commissioner for Patents ("Patents Office"), which is responsible for "examining patent

applications and granting applications on inventions when applicants are entitled to them, and publishing and disseminating patent information." *Id.* ¶ 10. On June 2, 2021, Blackshear "sent a search request" and a copy of Plaintiff's request to the FOIA Coordinator for the Patents Office, Minh Siridavong. *Id.* ¶ 11. Siridavong determined that two sub-offices within the Patents Office, the Office of Patent Legal Administration ("OPLA")[3] and the Office of Patent Training ("OPT"),[4] were likely to have records responsive to Plaintiff's request. *Id.* ¶ 12. Siridavong forwarded the search request to Assistant Commissioner for Patents in OPLA, Brian Hanlon, and Deputy Chief Patent Academic Officer in OPT, Deborah Reynolds. *Id.* Hanlon searched for records and identified five additional custodians within OPLA and one custodian in the International Patent Legal Administration ("IPLA")[5] who might have responsive records. *Id.* ¶¶ 14–15. The OPLA and IPLA custodians searched for documents related to "signatory authority" or "apparent authority" and located potentially responsive records on their USPTO computers, in their email accounts, and on the public USPTO website. *Id.* ¶ 16. Reynolds directed OPT Training Specialist Catherine Perez to search for responsive records within OPT. *Id.* ¶ 17. Perez searched for documents related to "signatory authority" or "apparent authority" in OPT's training material database. *Id.*

Subsequent to Defendant's initial search for responsive records, Campbell exchanged

---

[3] OPLA "advises the USPTO regarding patent examination policy, formulates new patent regulations, policies, and procedures, and develops and delivers training materials for patent examiners and the public to aid in understanding how to apply new policies and procedures." Dkt. 27 at 18 (citing Campbell Decl. ¶ 12).

[4] OPT "trains Patents employees, including patent examiners and staff." Dkt. 27 at 18 (citing Campbell Decl. ¶ 12).

[5] IPLA is responsible for "developing policy and resolving legal issues relating to the Patent Cooperation Treaty ("PCT") and providing training to patent examiners and the public concerning the examination of PCT applications." Campbell Decl. ¶ 15.

11

phone calls and emails with Plaintiff regarding the scope of his FOIA request. *Id.* ¶ 23. Campbell understood these conversations with Plaintiff to narrow the scope of his request; accordingly, she consulted with Blackshear and the Patents Office custodians "to determine if any documents were responsive to the narrowed request." *Id.* ¶ 26.

On December 17, 2021, Defendant sent its decision letter and an updated version of the 2013 Authority Chart to Plaintiff. *Id.* ¶ 27. After Plaintiff's appeal of Defendant's December 17 decision, Defendant reopened Plaintiff's request. *Id.* ¶¶ 30–31. Campbell reviewed the documents previously collected by the OPLA, IPLA, and OPT custodians to determine whether any additional documents should be disclosed. *Id.* ¶ 32.

In response to the objections lodged by Plaintiff's counsel in April 2022, Defendant again "searched for additional records responsive to all of Plaintiff's objections rather than treat [Plaintiff's counsel's] April 11 email as a new FOIA request." *Id.* ¶ 38. This additional search was primarily handled by Office of General Law ("OGL") attorney Jennifer Williams, OPLA Legal Advisor Raul Tamayo, and Office of Patent Application Processing ("OPAP")[6] Management and Program Analyst Janice Tippett. *Id.* Tamayo and Tippett searched their USPTO computers and email accounts for records related to "signatory authority," "apparent authority," "powers of attorney," and "POAs," which produced twenty-five additional pages of records responsive to Plaintiff's objections. *Id.* On April 19, 2022, Defendant produced a less-redacted version of the nine pages of emails from the February 11 production, now including senders, recipients, and some subject lines. *Id.* ¶ 39. On May 6, 2022, Defendant produced the twenty-five additional pages of records located by Tamayo and Tippett. *Id.* ¶ 41.

---

[6] "OPAP's duties include performing preliminary examination of almost all categories of patent applications to ensure all submissions meet the basic filing requirements; among other functions, OPAP also processes all powers of attorney." *Id.*

12

Thus, according to Campbell, in response to Plaintiff's request, at least ten custodians conducted searches across OPLA, IPLA, OPT, and OPAP. *Id.* ¶¶ 10–18, 38. The Campbell Declaration also sets forth the methodology of and rationale behind the search process; indicates the types of searches performed; lists the various locations searched; and specifies the search terms used.[7] Campbell Decl. ¶¶ 10–18. Plaintiff himself stated he thought he was "requesting at most a handful of documents," Dkt. 27-1 at 46, and Defendant was permitted to "rel[y] on its identified custodians to know where and how to search for guidance on such a narrow, esoteric subject," Dkt. 33 at 11. Plaintiff's challenge to the adequacy of Defendant's search focuses on the search terms used (and not used) by those custodians in their searches. However, "[i]n general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request." *Bigwood v U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (internal citation, quotation marks, and brackets omitted).

Defendant's initial search yielded, among other records, the 2016 Authority Chart. Based on Plaintiff's original request and Campbell's subsequent communication with Plaintiff, Campbell thought that the 2016 Authority Chart was "exactly what [Plaintiff] was looking for." Campbell Decl. ¶ 27. Indeed, the 2016 Authority Chart was an updated version of the very document Plaintiff

---

[7] Campbell asserts that custodians searched for documents "related to" "signatory authority" and "apparent authority," and later, "signatory authority," "apparent authority," "powers of attorney," and "POAs." Campbell Decl. ¶¶ 16–17, 38. The use of "related to" leaves open the possibility that the custodians retained discretion to use other search terms. However, "[t]he vast majority of cases in which an agency's declaration was found to be deficient regarding its description of search methodology and terms used are where agencies provide conclusory descriptions or no description at all." *Gluckman v. U.S. Dep't of Lab.*, No. 3:13-cv-169, 2013 WL 6184957, at *12 (E.D. Va. Nov. 26, 2013). Thus, as Campbell's declaration provides more information than a "conclusory description" of the search, the Court finds that there is sufficient detail regarding the search terms used here.

attached to his original request as an example of the type of information he sought. Dkt. 27-1 at 18–21; *see* Campbell Decl. ¶ 27 (stating that the 2016 Authority Chart was "the only record from the initial search that appeared to be an official guidance document on apparent authority, like the examples that Plaintiff included with his request"). When it became clear to Defendant that Plaintiff had not, in fact, intended to narrow his request and sought more documents beyond the 2016 Authority Chart, Defendant remanded and reopened Plaintiff's request, and conducted a re-examination of the records that had been collected via its initial search. Campbell Decl. ¶¶ 30–34. Furthermore, Defendant's willingness to conduct additional searches in response to Plaintiff's objections—even though Defendant was not required to make additional searches, *see Rein*, 553 F.3d at 365 (holding that an agency is "not required to look beyond the four corners" of a request and stating that if documents produced in response to a FOIA request contain leads for additional documents, a requestor "may pursue those leads through a second FOIA request specifying locations to be searched")—"substantially undercut[s] any suggestion of bad faith." *Bigwood*, 132 F. Supp. 3d at 140.

Plaintiff seeks an internally established set of "secret rules" that he believes governs USPTO personnel in "accepting and rejecting various signed documents." Dkt. 32 at 8; *see also* Dkt. 32-1, Declaration of David E. Boundy ¶ 2. Defendant has apparently not produced such a document to him. Although Plaintiff "seems to believe that there are other documents that he is entitled to, this belief, standing alone, is inadequate to withstand a motion for summary judgment." *Heily v. U.S. Dep't of Com.*, 69 F. App'x 171, 174 (4th Cir. 2003) (citing *Marks v. United States*, 578 F.2d 261, 264 (9th Cir.1978); Fed. R. Civ. P. 56(e)). Defendant's failure to use Plaintiff's long list of search terms and to produce the "secret rules" Plaintiff seeks does not preclude a finding that Defendant conducted an adequate search. The Court finds that Defendant's various searches

were reasonably calculated to find records responsive to Plaintiff's request.

### C. The Majority of Information has been Properly Withheld Pursuant to Exemption Five of the FOIA

The remaining issue in this case is whether Defendant properly redacted five documents pursuant to Exemption Five of the FOIA, under the attorney-client privilege and the deliberative process privilege. *See Rein*, 553 F.3d at 371. All five documents were redacted pursuant to the deliberative process privilege, while Documents Two and Three were redacted pursuant to both the deliberative process privilege and the attorney-client privilege. *See* Dkt. 27-2. Defendant initially elected to provide a *Vaughn* index to support its Motion for Summary Judgment. *See Vaughn*, 484 F.2d at 827; Dkt. 27-2 at 101–14. However, the Court found at a hearing that the *Vaughn* index did not contain sufficiently detailed descriptions for the Court to determine that Defendant properly redacted information pursuant to Exemption Five, and ordered *in camera* review of the documents. *See Rein*, 553 F.3d at 370 (stating that the agency "bear[s] the burden of providing sufficient factual information as to the document's nature or content from which the district court can independently assess the applicability of the claimed exemption"). Upon *in camera* review, the Court finds that while most of the information was properly redacted pursuant to Exemption Five, some information—namely, two images in Document Four—was improperly withheld and must be disclosed to Plaintiff.

#### 1. *Deliberative Process Privilege*

To invoke the deliberative process privilege under Exemption Five of the FOIA, the agency "must show that, in 'the context in which the materials are used,' the documents are both predecisional and deliberative." *City of Va. Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993) (quoting *Wolfe v. U.S. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). "Predecisional documents are 'prepared in order to assist an agency

decisionmaker in arriving at his decision,'" though the agency need not identify a specific decision or policy to which such documents were predecisional. *Id.* (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 n.18 (1975) (noting that "the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared"). The Supreme Court has cautioned courts that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process." *Sears*, 421 U.S. 132 at 153 n.18. "Deliberative material 'reflects the give-and-take of the consultative process,' by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *City of Va. Beach*, 995 F.2d at 1253 (quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). "[T]he deliberative process exemption protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Id.* (quoting *Coastal States*, 617 F.2d at 866).

Defendant contends that it redacted certain information that consisted of "communications between agency personnel" regarding: "a proposed change to an existing guidance document (the 2016 Authority Chart) that was never finalized;" "the application of existing regulation, policy, and guidance to specific patent applications being processed by the USPTO"; and "Plaintiff's FOIA request, including whether specific documents were releasable to the public." Dkt. 27 at 26. Defendant argues that the disclosure of the aforementioned information would prevent "candid and comprehensive discussions" among agency personnel, cause public confusion over official

16

USPTO policy, improperly disclose discussion related to specific patent applications, and could inadvertently aid parties involved in private patent litigation. *Id.* at 26–27.

All of the withheld documents consist of email discussions between USPTO personnel. *In camera* review of Documents One, Two, Three, and Five confirms that the information therein is predecisional and deliberative and, thus, properly redacted under the deliberative process privilege. Document One focuses on the application of existing policy to specific situations posed by specific patent applications and contains comments from individual USPTO employees as to how the Manual of Patent Examining Procedure ("MPEP"), a public document, and the Authority Chart should be applied in approving or denying specific titles. Document One also evidences internal debate over objective and subjective interpretations of the MPEP. As these discussions reflect "recommendations" and "the personal opinions of the writer rather than the policy of the agency," they are covered by the deliberative process privilege and were properly redacted. *City of Va. Beach*, 995 F.2d at 1253 (quotation marks omitted) (quoting *Coastal States*, 617 F.2d at 866).

Documents Two, Three, and Five contain discussions about a draft version of the Authority Chart that had not been distributed to OPAP, and with changes still pending approval by OGL and finalization by OPLA. "A draft is, by definition, a preliminary version of a piece of writing subject to feedback and change." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021). However, a draft is not "inherently deliberative," as the USPTO argues. Campbell Decl. ¶ 46. Labeling something a "draft" is not "determinative," and the Supreme Court has explained that "a court must evaluate the documents 'in the context of the administrative process which generated them.'" *Sierra Club*, 141 S. Ct. at 786 (quoting *Sears*, 421 U.S. 132 at 138).

Here, there are discrepancies between the 2016 Authority Chart (the version of the document produced to Plaintiff) and the withheld draft. Redacted discussion is also consistent

17

with Defendant's representation to Plaintiff that no update to the 2016 Authority Chart had been "finalized or distributed for use by USPTO personnel." Dkt. 27-2 at 42. Based on the redacted information, it appears the draft was neither widely distributed to USPTO personnel, nor regarded by USPTO personnel as the "functionally final" version of that document. *Sierra Club*, 141 S. Ct. at 788. Thus, the draft is covered by the deliberative process privilege and was properly withheld. *See id.* (finding that because the agency had not "hidden a functionally final decision in draft form" the draft was protected by the deliberative process privilege); *Coleman v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-656, 2022 WL 1837922, at *2 (E.D. Va. Jan. 20, 2022) (finding that a draft of an editorial on the calculation of opioid deaths, the subject of the plaintiff's FOIA request, was protected by the deliberative process privilege); *Energy & Env't Legal Inst. v. U.S. Dep't of State*, No. 1:15-cv-423, 2017 WL 3763853, at *9 (E.D. Va. Aug. 28, 2017) (same, regarding a draft list of names of "climate change validators").

*In camera* review of Document Four confirms, similarly, that most of the withheld information therein is predecisional and deliberative. Like Document One, the email discussions between USPTO personnel about the application of existing policy to specific situations posed by specific patent applications are covered by the deliberative process privilege and were properly redacted. *See City of Va. Beach*, 995 F.2d at 1253. However, pages fifteen and nineteen of Document Four contain images of the 2013 Authority Chart, which was previously disclosed to Plaintiff. This information is neither predecisional nor deliberative and was not properly withheld under Exemption Five, and should be produced to Plaintiff.

    2. *Attorney-Client Privilege*

In invoking the attorney-client privilege, "[a]n agency can be a 'client' and agency lawyers can function as 'attorneys' within the relationship contemplated by the privilege." *Rein*, 553 F.3d at 376 (quoting *Coastal States*, 617 F.2d at 863). "The attorney-client privilege is designed to

18

'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Id.* at 375 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege "is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Id.* (quotation marks omitted) (quoting *Coastal States*, 617 F.2d at 862); *see Solers, Inc. v. IRS*, 827 F.3d 323, 332 (4th Cir. 2016) (finding that the attorney-client privilege covered communication of "the specific issues on which [the IRS employee] sought legal advice while working on the audit"). Furthermore, "[t]his privilege protects 'not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Hanson*, 372 F.3d at 291 (quoting *Upjohn*, 449 U.S. at 390).

Defendant contends that the redacted information in Documents Two and Three is also covered by the attorney-client privilege. This information consists, in relevant part, of emails to and from OGL attorneys Tricia Choe, Kyu S. Lee, Nicholas Oettinger, Louis Boston, and Dorothy Campbell. Document Two and part of Document Three consists of emails in which Raul Tamayo, Legal Advisor for OPLA, seeks legal advice on matters from OGL attorneys Tricia Choe, Kyu S. Lee, Nicholas Oettinger. Document Three also consists, in part, of emails in which OGL attorneys Louis Boston and Dorothy Campbell seek information to assist them in processing Plaintiff's FOIA request, the subject of this litigation. These confidential communications fall squarely within the attorney-client privilege. See *Rein*, 553 F.3d at 375; *Hanson*, 372 F.3d at 291. Thus, Defendant was justified in redacting this information.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. 32) is

19

**DENIED**. Defendant's Motion for Summary Judgment (Dkt. 26) is **GRANTED** and Defendant is hereby **ORDERED** to produce the images of the 2013 Authority Chart on pages fifteen and nineteen of Document Four, as listed in the *Vaughn* index, to Plaintiff.

It is **SO ORDERED**.

March 17, 2023

Patricia Tolliver Giles
United States District Judge